IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIEL TURLEY,

        Plaintiff,

v.                                        Case No. 18-1264-JWB

LOWE'S HOME CENTERS, LLC,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 47.) The motion is fully briefed and is ripe for review. (Docs. 48, 49, 54.) For the reasons stated herein, the motion for summary judgment is DENIED.

**I. Facts**

In keeping with the standards governing summary judgment, the following statement of facts views the evidence, and all reasonable inferences therefore, in the light most favorable to Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence is viewed in the light most favorable to the non-moving party because credibility determinations, weighing conflicting evidence, and drawing appropriate inferences are jury rather than judge functions).

On August 2, 2017, Plaintiff went to the Lowe's Home Centers, LLC, store ("Lowe's") at 11959 E. Kellogg Dr. in Wichita, Kansas. Plaintiff was looking for carpet transition strips, which are long pieces of metal or wood used on floors where they transition from one surface to another, such as carpet to wood. Plaintiff had previously purchased transition strips at Lowe's. The

transition strips were stored, standing vertically, in a bin. Plaintiff was purchasing a 12-foot strip. (Doc. 48-1 at 15.) The storage bin had a base toward the bottom that kept the strips from sliding out. To get one out, a person had to lift the bottom of the strip up and over the base and then pull it down to get it out of the storage bin. (*Id.*)

As Plaintiff attempted to remove a strip from the bin, he noticed it was "kind of stuck." (*Id.* at 16.) He "kind of pushed up harder on it," when a piece of something fell from above and hit him in the head. (*Id.* at 16-17.) Plaintiff could hear the piece sliding down the transition strip as it fell. The piece hit Plaintiff in the left side of his forehead and came to rest in his arms. (*Id.* at 18.)

The piece that fell was a "waterfall FBMO" (shorthand for front-to-back-member), which is part of a multi-level shelving structure. A waterfall FBMO is a metal channel that is designed to fit on top of two upright beams (front and back) to keep them from spreading apart, thereby making the assembled structure more stable and keeping "racking" (shelving) or product stored on racking from falling through. (Doc. 48-2 at 3-5.) The FBMOs are not secured. They "kind of clamp on" top of the two beams and the weight of product on top of them normally keeps them from going anywhere. (*Id.* at 10.) If there is no product holding an FBMO down, it can be dislodged by an upward force. (*Id.*)

Plaintiff's girlfriend, Erica Crandell, was standing next to Plaintiff when the FBMO fell. She testified that when Plaintiff lifted the transition strip up to get it out of the bin, it caught the FBMO and pushed it up, and the FBMO then rolled down the transition strip and hit Plaintiff. (Doc. 48-3 at 8-9.)

The FBMO that hit Plaintiff had been located at the top of the shelving structure, about 12 feet off the ground, and had no racking or product on top of it. (Doc. 48-2 at 5; Doc. 49-2 at 3.)

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.* The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Analysis

Plaintiff's complaint alleges negligence, specifically premises liability, and seeks damages against Defendant. To establish negligence under Kansas law, Plaintiff must prove the "existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered." *D.W. v. Bliss*, 279 Kan. 726, 734, 112 P.3d 232, 238 (2005). In an action for premises liability, an owner or operator of a business "owes a duty to the business visitor to use reasonable care, under all of the circumstances, in keeping the business place safe." *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1224 (D. Kan. 2013) (citing *Endsley v. Am. Drug Stores, Inc.*, 93 P.3d 745, 2004 WL 1609203, at *2 (Kan. Ct. App. 2004)). "In the vast majority of cases, claims based on negligence present factual determinations for the

jury, not legal questions for the court." *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450, 453 (2009).

Plaintiff alleges Defendant was negligent in the way it created, placed, secured, and maintained the shelving that allegedly caused him injury. (Doc. 43 at 5.) He argues the unstable shelving was a hazardous condition of which Defendant knew or should have known, and that it negligently failed to remedy the condition or warn its customers about it. (*Id.*) Plaintiff additionally invokes the doctrine of res ipsa loquitur. (*Id.*)

Defendant first argues the claim for ordinary negligence fails because Plaintiff has no expert testimony on whether the shelves were installed or maintained defectively. (Doc. 48 at 10-11.) Under Kansas law, "expert testimony is necessary only if the matter is outside the common knowledge of the jury." *Tudor v. Wheatland Nursing L.L.C.*, 42 Kan. App. 2d 624, 628, 214 P.3d 1217, 1222 (2009). In reviewing whether an expert is necessary, it "depends on whether, under the facts, 'the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation therefrom.'" *Id.* at 630 (citing *Juhnke v. Evangelical Lutheran Good Samaritan Society*, 6 Kan. App.2d 744, 748, 634 P.2d 1132 (1981)). Defendant concedes no Kansas courts have directly addressed this issue, but it cites *Curry v. J.C. Penney Corp.*, No. WGC-09-830, 2010 WL 972430 (D. Md. Mar. 12, 2010) as persuasive on the point that expert testimony is required based on the circumstances in this case. Defendant argues that this case is essentially a negligent design case in disguise. (Doc. 48 at 10.)

In *Curry*, the plaintiff was hit in the head by a large box. Notably, there was no evidence of what caused the box to fall or where it actually fell from. 2010 WL 972430, at *4-5. There was also no evidence of how the box was stacked or where it was stacked before it fell. Although the court discussed the lack of an expert, that discussion was contained within the analysis of the

plaintiff's claim under the theory of res ipsa loquitor and not ordinary negligence. *Id.* at *6-7. The court noted that the plaintiff "has not attempted to prove the details of how the accident occurred. He has not presented any direct evidence of negligence. [The plaintiff] therefore is entitled to rely on the doctrine of res ipsa loquitur." *Id.* at *7. The case does not stand for the proposition that a party needs expert testimony to establish ordinary negligence when a shelving item falls on a customer.

In this case, the evidence is that a customer, shopping for a 12 foot transition piece at Lowe's, would be required to lift the piece up prior to being able to remove it from the bin and purchase the piece. The facts show that Plaintiff did lift the piece up in order to remove it from the bin. Additionally, the facts show that the FBMO was positioned at the top of the shelving unit. The FBMO can be dislodged by being forced upward. The FBMO will not be dislodged if racking and product are placed on top of the FBMO. There was no racking placed on top of the FBMO that was above the bin where the transition pieces were stored. Additionally, Scott Ferguson, Defendant's employee who has experience with the shelving, testified that he did not know why the FBMO was placed on the shelving when there was no racking placed above the FBMO, such that the FBMO was unnecessary. (Doc. 49 at 5.) The facts also show that the FBMO became dislodged and hit Plaintiff in the head. Plaintiff argues that the placement of the FBMO was negligent because there was no racking above the FBMO for additional product storage. With no racking, the FBMO was not fully secured and could be dislodged. Defendant argues that an expert is necessary to testify that the FBMO was negligently installed or maintained; that the FBMO could have been secured; and that the attempts to secure the FBMO would have worked, would not have been prohibitively expensive, or unduly burdensome. (Doc. 48 at 12.)

Viewing the facts in a light most favorable to Plaintiff, the court finds that there is a dispute of fact as to whether Defendant breached its duty to use reasonable care, under all of the circumstances, in keeping the business place safe. The facts show that the FBMO was placed at the top of the shelving without any racking to secure the FBMO. The FBMO could be dislodged by an upward force. Moreover, by storing the 12 foot transition pieces in the bin, Defendant was on notice that a customer was required to lift the 12 foot transition piece up in order to remove the piece from the bin. Therefore, a customer was required to perform the action that Plaintiff performed which resulted in the FBMO becoming dislodged and falling. This is sufficient to show that there is a factual dispute as to whether Defendant's placement of the FBMO was negligence. *See Brown v. Wal-Mart Stores, Inc.*, 11 F.3d 1559, 1563 (10th Cir. 1993) (finding sufficient evidence of negligence when an injury occurred after shelving fell because the plaintiff's husband "browsed through the display and made selections from the display in a manner anticipated by Defendant.") (applying Oklahoma law). Based on these facts and circumstances, the court finds that a jury "would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation therefrom.'" *See Tudor*, 42 Kan. App. 2d at 630 (citation omitted). Defendant owed a duty to keep its customers safe. A jury could determine, based on the facts as discussed, that Defendant breached that duty by using a FBMO at the top of the shelving when there was no product stored on top and storing the transition pieces under the FBMO. *See Meek v. Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 476–77, 806 A.2d 546, 556 (2002) (a "merchandise display constructed so that an inspection by a customer, in a foreseeable and reasonable manner, causes the merchandise to fall, is a negligently constructed display."); *Repecki v. Home Depot USA*, 942 F. Supp. 126, 128 (E.D.N.Y. 1996) (expert testimony unnecessary regarding the storage of lumber in a bin).

Plaintiff has also asserted a claim of negligence under the theory of res ipsa loquitur.[1] This provides an alternative basis for negligence when direct evidence is lacking. To succeed under this theory of negligence, Plaintiff must show that (1) "the thing or instrumentality causing the injury or damage was within the exclusive control of the defendant; (2) the occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence; and (3) the occurrence must not have been due to contributory negligence of the plaintiff." *Smith v. Locke Supply Co.*, No. 98-2495-JWL, 1999 WL 1423070, at *4 (D. Kan. Dec. 21, 1999) (citing *Bias v. Montgomery Elevator Co.*, 216 Kan. 341, 532 P.2d 1053, 1055 (Kan. 1975)). Defendant moves for summary judgment on the basis that Plaintiff cannot establish that the FBMO was exclusively within Defendant's control and because the accident was, at least in part, due to Plaintiff's negligence. (Doc. 48 at 13.)

With respect to exclusive control, Defendant argues that Plaintiff has not shown that he was the first person in the aisle or that another person did not dislodge the FBMO. "In order to establish exclusive control it is not necessary for the plaintiff to eliminate all other possible causes of the accident. All that is required is that the plaintiff produce sufficient evidence from which a reasonable man could say that on the whole it was more likely than not there was negligence on the part of the defendant." *Bias,* 216 Kan. at 344 (citation omitted).

Defendant cites to *Curry, supra,* for support of its position. In *Curry*, however, the plaintiff had no explanation as to how the box fell and hit him. 2010 WL 972430, at *4-5. The court determined that the defendant did not have exclusive control over the box because customers had access to the box. *Id.* at *9. In this case, the FBMO was located 144 inches from the floor. There is no evidence that a customer would have had direct access to the FBMO. The FBMO was located

---

[1] Plaintiff may proceed on different theories of negligence at this stage of the proceedings. *Hugo v. Manning*, 201 Kan. 391, 396, 441 P.2d 145, 149 (1968).

out of a customer's reach and the only potential way that a customer may have dislodged the FBMO was by removing a transition strip prior to Plaintiff removing his transition strip. While Defendant is free to argue this hypothetical to the jury, it does not result in a determination as a matter of law that the FBMO was not in the exclusive control of Defendant. *See Norris v. Ross Stores, Inc*., 159 Md. App. 323, 335–36, 859 A.2d 266, 273–74 (2004) (question is for jury on whether another customer tampered with display prior to incident); *see also Anderson v. Home Depot U.S.A., Inc.,* No. GJH-14-2615, 2017 WL 2189508, at *8–9 (D. Md. May 16, 2017) (court found that exclusive control was satisfied even though there were other customers who had access to the shelves). Kansas law does not require Plaintiff to refute all other possible causes of the accident. The FBMO was clearly out of reach of a typical customer at Defendant's business. Plaintiff was the only customer in the vicinity that was removing a transition piece at the time of the incident. Therefore, viewing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has shown that the FBMO was in Defendant's exclusive control.

Finally, Defendant argues that Plaintiff contributed to his own negligence by "forcefully" dislodging the FBMO. Plaintiff disputes that he took any action that was beyond what was necessary to remove the transition strip. Plaintiff's testimony states that the transition strip was stuck and that he "pushed up harder." (Doc. 48 at 6.) While Defendant construes this testimony as some sort of forceful action that constitutes negligence, the court is not inclined to do so. Plaintiff removed the transition piece by pushing it up, which was necessary to remove the product. The fact that he had to push the piece harder because it was "kind of stuck" does not automatically result in a finding that his actions were negligent. Defendant cites no authority in support of this position.

Viewing the evidence in a light most favorable to Plaintiff, Plaintiff "was doing no more than what was required of [him] to select the product." *Anderson*, 2017 WL 2189508, at *9. Therefore, the court finds that the third element has been met.

Defendant has not shown, as a matter of law, that it is entitled to judgment on Plaintiff's negligence claim. These issues are fact questions for the jury.

## IV. Conclusion

Defendant's motion for summary judgment is DENIED. (Doc. 47.)

IT IS SO ORDERED this 5th day of February, 2020.

						____s/ John W. Broomes_____
						JOHN W. BROOMES
						UNITED STATES DISTRICT JUDGE